# CASES

ADJUDGED IN

# THE COURT OF CHANCERY

## OF THE STATE OF NEW JERSEY.

### FEBRUARY TERM, 1874.

THE EQUITABLE LIFE ASSURANCE SOCIETY OF THE UNITED STATES *vs.* LAIRD and others.

1. Where the subpœna is returned, with an affidavit by the sheriff that he has made due and diligent inquiry for the defendant, and was informed and believed that he was not a resident of his county at that time, but of another state, the statutory order for publication is warranted, though the defendant was a resident of this state.

2. An error in the name of a paper, (Long Branch *Times*, when it should have been Long Branch *News*,) in which notice to an absent defendant was directed to be published, is amendable after sale under execution. No prejudice thereby results to the purchaser's title.

3. An amended bill is considered as an original bill, and a new subpœna to answer is not necessary when the defendant has not appeared.

4. A decree and execution may be amended by an order directing that the mortgaged premises be sold in a different manner from that directed by the decree and execution. Such amendment cannot injuriously affect the title acquired by the purchaser at the sheriff's sale.

On the 20th of January, 1873, the complainants filed their bill for foreclosure and sale of the premises known as the Mansion House property, at Long Branch, in this state. They made the widow and heir-at-law, and the administrator with the will annexed of the mortgagor, together with the other encumbrancers then known to them, parties to the suit.

Process of subpœna to answer, returnable to the 4th day of February then next, was issued for all of the defendants. On the 22d of March, 1873, they amended their bill by making parties thereto five persons, to whom the mortgagor had conveyed certain parcels of the mortgaged premises, and certain other persons who held, by assignment, three of the mortgages on the premises, in respect of which mortgages they had, in ignorance of the assignments, made the mortgagees parties to the original bill. The sheriff of Monmouth returned the subpœna directed to Julia Laird, the widow above named, with an affidavit that he had made due and diligent inquiry for her, for the purpose of serving the subpœna upon her, and that he was informed and believed that she was not a resident of his county at that time, but resided in the city of New York. Mrs. Laird's last place of residence in this state, was in Monmouth county.

The encumbrancers answered. Mrs. Laird did not appear. On the 11th of February, 1873, an order for publication as to her, in the usual form, was made, requiring her to appear, plead, answer, or demur, on or before the 12th day of April then next. It directed that the notice of the order prescribed by the rules of this court should, within twenty days from the date of the order, be served on her, either by actual service upon her, personally, or by leaving the same at her residence, with a person of the family; or in default of such service, that the notice be published, within said twenty days, in The Long Branch Times, a newspaper printed at Long Branch, in this state, and continued therein for six weeks, successively, at least once in every week, and that a copy thereof be also mailed, within the same time, to her, directed to her post office address, if it could be ascertained. Due proof of the publication, in the Long Branch News, of the notice, within and for the time specified in the order, and of due inquiry for the residence and post office address of Mrs. Laird, was filed. A decree *pro confesso* was entered against her on the 29th of April, 1873. There was a reference in the cause. A final decree for foreclosure and sale of the mortgaged prem-

ises was made on the 21st of June, 1873. It directed that the premises be sold in certain parcels, in certain order. A writ of *fieri facias* was issued in pursuance of the decree, directed and delivered to the sheriff of Monmouth, who advertised the property for sale under it.

On the 3d of September, 1873, the encumbrancers and the administrator of the mortgagor filed in this court, an agreement that the mortgaged premises should be sold in parcels different from those specified in the decree and execution, and that the proceeds of the sale, if not sufficient to pay the claims of all the encumbrancers, should, after payment of the amount due the complainants, whose mortgage was the first mortgage, and covered the whole property, be brought into court, to be disposed of by the court according to the rights of the encumbrancers. The occasion of the agreement was the discovery, that to sell according to the directions of the decree and execution, would necessitate a sacrifice of the property, it having been ascertained that the hotel, which constituted a great part of the value of the premises, stood partly on each of two of the parcels, which had been decreed to be sold separately. An order was on motion made, in pursuance of, and according to this agreement.

On the 6th of September, 1873, part of the premises was sold by the sheriff, according to the last mentioned order, and purchased by Thomas J. McCahill and Thomas McLellan, who signed an acknowledgment of the purchase at the foot of the conditions of sale, and paid the per centage of the purchase money required by the conditions. Subsequently, the purchasers refused to complete the purchase, on the ground that the title to the premises was defective, because Mrs. Laird was a resident of this state when the order for publication was made, and therefore ought to have been served with process; that if she were not such resident, the publication directed by the court had not been made, the order directing publication in the Long Branch Times, while the proof filed was of publication in the Long Branch News; that no subpœna had been issued for Mrs. Laird to answer

the amended bill, and that the proceedings were, for these reasons, not conclusive against, or binding upon her ; and, further, because of the alteration of the mode of sale by the order above alluded to. They have also filed petitions, asking for an order that the deposit of purchase money be returned to them.

Testimony was taken under an order to show cause, granted on the petitions.     From the testimony it appears, among other things, that when the order for publication was made there was no newspaper printed at Long Branch by the name of The Long Branch Times, and the only newspaper then printed or published there was the Long Branch News ; and that Mrs. Laird was present at the sale.

*Mr. A. Zabriskie,* for McCahill, one of the purchasers and petitioners.

*Mr. Charles Haight,* for McLellan, the other purchaser and petitioner.

*Mr. A. Kirkpatrick* and *Mr. Ashbel Green,* for the complainants.

*Mr. W. H. Vredenburgh, Mr. R. Allen, Jr.,* and *Mr. B. Gummere,* for Conover & Rue, mortgage holders.

*Mr. J. E. Lanning,* for Maps & Slocum, mortgage holders.

*Mr. H. G. Clayton,* for Charles Hulick, a mortgage holder.

THE CHANCELLOR.

The mortgaged premises in this suit were sold by the sheriff of the county of Monmouth under the *fieri facias* issued for that purpose.     The petitioners became the purchasers at the sale.     They paid the amount of deposit required by the conditions.     They now apply for an order that the deposit be returned to them, on the ground that since

the sale they have discovered that the title to the mortgaged premises is defective, because, as they allege, the interest of Julia Laird, widow of the owner of the equity of redemption, was not foreclosed in the suit; and because the proceedings in the cause were irregular.

They allege that Julia Laird was, at the time of the filing of the bill, a resident of this state, and ought, therefore, to have been served with process in the suit. The evidence satisfies me that she was not, at the time of the filing of the bill in this cause, or at the time of issuing the subpœna to answer, addressed to her, or at the time of making the order for publication, a resident of this state. But if she were, the order was warranted by the affidavit which was before this court when it was made. The statute (*Nix. Dig.* 109, § 22,) directs, that "in case of a bill filed against any defendant, against whom a subpœna or other process to appear shall issue, and such defendant shall not cause his appearance to be entered in such suit as according to the rules of said court the same ought to be entered, in case such process has been duly served, and it shall be made to appear to the satisfaction of the Chancellor that such defendant is out of the state, or cannot, upon due inquiry, be found therein, or that he conceals himself within this state, every such defendant shall be deemed and taken to be an absent defendant; and thereupon the Chancellor may, by order, direct such absent defendant to appear, plead, answer, or demur to the complainant's bill at a certain day therein to be named, not less than two nor more than six months from the date of such order, which order shall, within twenty days thereafter, be served personally on such defendant by a delivery of a copy thereof to him, or be published in one or more of the public newspapers printed in this state, and designated in such order, for six weeks successively, at least once in each week, and which order shall also be published or served in any other manner that the Chancellor, in the same, may see proper to direct."

The statute applies as well to persons who may be domi-

ciled in this state, as to those whose domicil is beyond its borders.

The petitioners further insist, that if Mrs. Laird was properly regarded by the court as an " absent " defendant, notice was not given to her according to the requirements of the statute.

It appears that the order for publication directed that the notice be, within twenty days from its date, served on Mrs. Laird, either by actual service upon her personally, or by leaving the same at her residence, with a person of the family; or that in default of such service, the notice be published within said twenty days in the Long Branch Times, a newspaper printed at Long Branch, in this state, and continued therein for six weeks successively, at least once in every week, and that a copy thereof be also mailed within the same time to her, directed to her post office address, if the same could be ascertained. The order in all respects was complied with, except that the newspaper in which the notice was published, was one called The Long Branch News. It was however, the only newspaper which, at the date of the order, was printed or published at Long Branch. The designation, 'Long Branch Times,' was unquestionably a mere misnomer. I have no doubt that the order is amendable in this respect. There is not, there cannot be any question but that the Long Branch News was the paper intended by the court in making the order for publication. The misprision in drawing the order, may be corrected. In *Jeffreys' Heirs* v. *Callis*, 4 *Dana* (*Ky.*) 466, in error, the defendant had obtained a decree against the unknown heirs of Jeffreys, upon a certificate of publication, by a person as editor of the newspaper in which the publication was made. But editors were not by law authorized to certify such publications; the certificate of the printer of the newspaper was required. The court had permitted the person who had so certified as editor, to amend the certificate three years afterwards. The order allowing the amendment, was affirmed in the appellate court.

It appears by the testimony, that Mrs. Laird was present at the sale of the mortgaged premises by the sheriff, and

neither gave notice of any claim upon the property, nor protested against the proceedings under which it was sold. She did not appear, plead, demur, or answer in the suit.

The complainants amended their bill on the 22d day of March, 1873. The time for appearance fixed in the order for publication, was the 12th day of April, 1873. Mrs. Laird took no copy of the bill from the office.

It is objected by the purchasers, that a decree based on the bill as amended, cannot bind her. The fifty-second rule of this court, provides that the complainant may amend his bill of course, and without motion or rule, at any time before answer, plea or demurrer filed, and without cost. The fifty-fifth rule provides that "in all cases where the defendant's appearance has been entered, and he hath procured a copy of the bill, and the complainant is allowed to amend without costs, he shall furnish the defendant with a certified copy of the amended bill, or amend the defendant's copy gratis."

As before stated, Mrs. Laird did not appear in the suit. Under the rule, the complainant was at liberty to amend his bill, and no new subpœna to her to answer, was necessary.

In *Maddock's Chancery, p.* 369, it is laid down, that an amended bill is considered as an original bill, but new subpœnas are not necessary.

In *Daniell's Ch. Pr., p.* 402, (*4th ed.*) it is said, in reference to amendments of the character of those made in this case : "But although it is the practice to call a bill thus altered an amended bill, the amendment is in fact esteemed but as a continuation of the original bill, and as forming part of it, for both the original and amended bill constitute but one record ; so much so, that where an original bill is fully answered, and amendments are afterwards made, to which the defendant does not answer, the whole record may be taken *pro confesso* generally, and an order to take the bill *pro confesso* as to the amendments only, will be irregular."

In *Smith's Ch. Pr.* 250, it is said : A bill may be amended without costs, if the order to amend is obtained before the defendants have appeared ; or if some of the defendants

have appeared, and others have not, it may be amended as to those who have not appeared, and as to those who have appeared, on the terms of amending their office copies.

In pages 254 and 255 of the same work, it is laid down that all those defendants who have answered the original bill, are, if required to answer the amendments, served with subpœna, but it is not necessary to serve those defendants who by the order are not required to answer, nor those defendants who have appeared but not filed answers to the original bill, with subpœnas to answer the amended bill.

In *Stanley* v. *Bond*, 6 *Beav.* 420, it was held that where a bill is amended before answer, it is not necessary to serve a subpœna to answer the amendments. In that case application was made to discharge an attachment, which had been issued against the defendant for not having answered. On his behalf it was urged that the bill ought to be regarded as an original bill, filed at the time of filing the amendments, and since, should it be so regarded, the time for answering would not yet have expired, the attachment was prematurely issued. The court, however, had no doubt of the regularity of the attachment, and refused the motion, with costs.

Mrs. Laird is not before the court complaining of any violation or disregard of her rights, whether through want of notice or irregularity of proceeding. The court adjudged that she had been duly notified according to law, and in pursuance of that adjudication, it decreed that she should stand absolutely debarred and foreclosed of all equity of redemption in the premises when sold under the decree.

But it is further objected, that after the mortgaged premises had been advertised for sale under the execution, an order of this court was made, directing the sheriff to sell the property in a different manner from that in which it was directed to be sold by the decree and execution. Whether the property be ordered to be sold in parcels or all together, the notice of sale is the same. The only question that can arise, is as to the propriety of the practice. To have sold the property according to the directions of the decree and execution, would

have been to sacrifice it. It was discovered that so to sell it would be to dispose of the hotel building in two parts. The encumbrancers, other than the complainants, therefore, and the personal representative of Samuel Laird, deceased, who, at the time of his death, was the owner of the equity of redemption, to avoid the difficulty, united in an agreement that an order should be entered, directing that the sale be made in other parcels than those specified in the decree and execution, and that all the proceeds of sale, after satisfying the first mortgage, (the complainant's,) which was on the whole property, and which, it may be remarked, was executed by Samuel Laird, prior to his marriage with the defendant, Julia Laird, be brought into court and disposed of according to the equities between the parties. The complainants made no objection to the proposed order, and the order was made, in effect amending the decree and execution in these respects. It has been the practice of this court to make such amendments in that manner, in the interest of all parties, thus to provide for the sale of the mortgaged premises in the most advantageous way. The subject is thoroughly under the control of the court. This amendment of the decree and execution, could not in any way injuriously affect the title acquired by the purchasers at the sheriff's sale.

The petitions of the purchasers will be dismissed, but without costs, and the order for publication will be amended.