# COURT OF ERRORS AND APPEALS

26  531
49   22
26  531
52   61

# OF THE STATE OF NEW JERSEY,

## ON APPEAL FROM THE COURT OF CHANCERY.

## MARCH TERM, 1875.

McCAHILL and another, appellants, and THE EQUITABLE LIFE ASSURANCE SOCIETY OF THE UNITED STATES, respondents.

1. A purchaser under a foreclosure sale will not be relieved from his bid on the ground that the title offered him is defective, such supposed defect arising from an alleged irregularity in the publication of the notice, to a non-resident, of the pendency of the suit.

2. The statute directs that a decree *pro confesso* may be taken against a non-resident failing to appear, after proof of service of the publication of the order for his appearance, "to the satisfaction of the Chancellor;" and the order of the Chancellor, declaring that such publication has been made to his satisfaction, and directing a decree, is conclusive upon the question as between such non-resident defendant and the purchaser under the decree.

3. The general principle is, that the judgment of a superior court cannot be impeached collaterally, for want of jurisdiction over the parties to it.

The mortgaged premises were sold under a decree of fore-closure, and the purchasers, the appellants in this court, applied to the Chancellor, by petition, to have their deposit returned, and to be relieved from their bid, on the ground that a non-resident defendant, the widow of the mortgagor, had not been made, legally, a party to the suit, and that the title, consequently, was defective. The grounds of this exception are stated in the opinion. The purchasers appealed, the decision in Chancery being against them.

The opinion of the Chancellor is reported in 9 *C. E. Green* 319.

*Mr. Vanatta,* for appellants.

*Mr. B. Gummere,* for respondents.

The opinion of the court was delivered by

THE CHIEF JUSTICE.

This was an application by purchasers at a foreclosure sale, to be relieved from the bid made by them.

The power of the court, thus invoked, is one which should, on all proper occasions, be liberally exercised. It has some-times been said, that the court has rather a greater power over these contracts, which are made with itself, than over any other class. And the cases are numerous in which the buyer has been absolved from the obligation of his bargain, on the plea that he had been misled by mistake, or entrapped by fraud. Mr. Sugden says, that "the authority which the court has over these contracts enables it, in a proper case, to relieve the purchaser as well as the suitor." The question, there-fore, is, whether the petitioner in the present case has shown that it would be inequitable to compel him to complete his purchase.

The objection he makes is this, that the title to the premises tendered to him under the decree of foreclosure, is imperfect. The flaw pointed out is, that one of the persons having an interest in the estate which was sold, although made a

defendant in the suit, was not legally brought into court, and, consequently, was not subject to its jurisdiction.

The defendant thus referred to was the widow of the deceased owner of the equity of redemption. She was a non-resident of the state, and an order for publication in the usual form was accordingly made. This order was directed by the Chancellor to be published in " The Long Branch Times, a newspaper printed at Long Branch, in this state." The affidavit of publication showed that this order was in all respects complied with, excepting that, instead of being published in a newspaper called " The Long Branch Times," it was published in one entitled " The Long Branch News," the latter being the only paper, at the date of the order, or afterwards, published at Long Branch. This absent defendant failing to appear, and the Chancellor, deeming the designation in the order, of the newspaper by its name a mere misnomer, and that the order of publication had been substantially complied with, signed a decree *pro confesso*. A final decree for sale followed, in due order, and the purchaser at such sale now raises up the objection, above stated, that as the publication of notice to the absent defendant was not published in literal conformity to the order of the court, such absent defendant is not bound by the decree, and, consequently, the title to the premises now offered to him is imperfect.

I am at a loss to perceive upon what legal principle it is, that it can be claimed that this petitioner can be heard on the ground thus assigned. He is not a party to this suit, and his only standing, on this motion, is his right to protect himself. He can complain of no part of the procedure, unless, potentially, it can result in an injury to his own rights. His fear now is, that the Chancellor erred in deciding that the publication against this absent defendant had been legally made. What if such fear is well founded? Can it be even plausibly pretended, that such error can affect the title to the land decreed to be sold? I am not willing to have it thought for a moment, that an error of this nature, even if it existed, would be attended with such a result. The existence of a doubt

upon the subject would be, I think, very much to be deprecated. It would at once produce a widespread and well founded apprehension with respect to titles derived under decrees in the Court of Chancery. Indeed, if the doctrine contended for existed, it is not easy to see how any discreet person could be induced to bid at any judicial sale. That this is not overstating the probable effect of the establishment of the doctrine in question, will be manifest to any one who will consider it with attention. The subject may be thus stated :

The statute (*Nix. Dig.* 109, *sec.* 22) provides that, in case of a non-resident defendant, an order shall be made by the Chancellor, notifying such defendant to appear within a certain time. It also further directs that such order shall be served personally on such defendant, or be published in one or more of the newspapers printed in this state, and designated in such order. The act then proceeds in these words : " And in case such absent defendant shall not appear, &c., and on proof of personal service, or of the publication of such order or orders as aforesaid, and of the performance of the directions contained in the said order or orders, *to the satisfaction of the Chancellor*, the Chancellor may order and direct that the complainant's bill be taken as confessed against such absent defendant," &c.

It thus appears that, by the express authority of the statute, the Chancellor, in the orderly progress of the cause before him, is to decide upon this fact of due publication, whereby the absent defendant is made a party to the suit. Such a decision is an adjudication, by a court of general jurisdiction, in a regular course of law, regarding a subject over which such court has unquestionable cognizance. Unless such a judgment is final, until reversed in a direct proceeding for that purpose, I know of none that can be safely said to be possessed of that quality. Such a judicial act may be voidable, but it is not void. If even admittedly erroneous, such error cannot be set up in a collateral proceeding against the decree founded upon it. This I regard as the ancient and well settled rule of law, a rule which is absolutely necessary to impart to judicial

decisions that controlling efficacy, without which they cannot effect the purpose for which they are designed. This, it seems to me, is the universal rule with reference to all the higher courts of general jurisdiction ; and it can never be more appropriately enforced than when the suit, as in the present case, is a proceeding *in rem.* In such an instance, the cognizance over the case being vested in the tribunal, by reason of the presence of the tangible subject of the controversy, a formal notification of the judicial action to the parties interested, is not absolutely essential to its validity ; and the consequence is that, in cases of this class, a notice of the action to a non-resident is no more necessary than is a notice to a resident. The *res* being within the jurisdiction, the judicial authority arises from that circumstance ; and the consequence is, if the resulting judgment can be impeached by a non-resident, on the ground that he was not given the notice of the action which the law requires, a similar exception would prevail if urged by a person resident in the state. Granted that the defendant in the present case can, in a collateral proceeding, object to this decree, on the plea that the notice was not published as the statute directs, it would follow, ininevitably, that any defendant, resident within the state, could, in like manner, invalidate the decree by showing that the subpœna had not been served upon him as the law requires. It seems impracticable to discriminate upon principle, between such instances. It certainly needs no reasoning to demonstrate that such a competency in litigants to challenge the various steps of the procedure after the final result, would render such result practically worthless. From the evident necessity of preventing the uncertainty with regard to the stability of legal proceedings, in their concluded form, which would otherwise have supervened, the doctrine of estoppel by record came naturally into existence. The petitioner in this case proceeds upon the ground that if he should take the title by virtue of this decree, such title would be liable to be impeached by the absent defendant; but if this doctrine of estoppel exists, it is manifest that this could not

be done, as such non-resident defendant, being .embraced in the decree, would be concluded by the record.   Notwithstanding inconsiderate dicta to be found, here and there, in some of the modern reports, it seems to me unquestionable that it is the general, legal principle that a judgment of a superior court cannot be impeached collaterally, for want of jurisdiction over the parties to it.   If this non-resident should bring her suit for dower against this purchaser, having taken the title which he has agreed to take, and should aver, when this decree should be interposed as a defence, that the notice to make her a party was not duly published, such reply would, necessarily, be overruled, as it would stand opposed by the solemn finding upon the record.   In 1 *Inst.* 260, Lord Coke says :   "The rolls, being the records or memorials of the judges of the courts of record, import in them such incontrollable credit and verity, as they admit of no averment, plea, or proof to the contrary.   And if such a record be alleged, and it be pleaded that there is no such record, it shall be tried only by itself; and the reason hereof is apparent, there should never be any end of controversies."   A long series of cases is in accord with this statement, and illustrates the rule in many varied aspects.   The citation of a few will serve to show how inflexibly it has been maintained by courts of the highest eminence.

In *Rex* v. *Carlile,* 2 *B. & Adolph.* 362, the defendant, having been convicted of a libel, brought a writ of error, and assigned for error in fact, that there was but one of the justices named in the commission present when the jury gave their verdict.   But this was held inadmissible, as it contradicted the statement of the record in that particular, Lord Tenterdon saying :   "The authorities are clear, that a party cannot be received to aver as error in fact, a matter contrary to the record."   The opinion from which this citation is taken contains a reference to many of the English decisions on this subject, which it is impossible to turn to without becoming convinced how completely the principle in question has been regarded as a legal axiom from the earliest judicial annals.

In the great case of the *Duchess of Kingston*, 2 *Smith's L. Cases* *121, the rule was stated as a familiar one, and the rulings in this case have been recently said by Lord Chancellor Selborne, in *Ochsenbein* v. *Papelier*, *L. R.* 8 *Ch. App. C.* 698, "to have always been considered perfectly sound law."

And, perhaps, in no class of cases is the precise point now under consideration, more clearly marked and explained than in those which deal with the distinction, with respect to the conclusive efficacy of the record, that exists between a domestic and a foreign judgment. Touching judgments of the latter class the question has often arisen, whether a want of jurisdiction in the foreign tribunal can be set up as a matter of fact in spite of the contradictory averment of the record. The very point now raised has, in some of these cases, been agitated; that is, the right of a party, against whom the judgment has gone in the foreign court, to prove that he was not legally made a party to the action. These adjudications are important on this inquiry, as all their arguments proceed on the admitted premise, that such proof could not be received with respect to domestic judgments, the effort being to reduce the decisions of foreign courts to a lower grade of authority. An examination of the following cases will show that the point now in question is conceded in all of them, and it will be perceived that some of these authorities are taken from the English, and others from the American reports. *Bowles* v. *Orr*, 1 *Y. & Coll. Ex.* 464.

And upon the general doctrine, that the final judgment of a court of general jurisdiction cannot be called in question, in a collateral proceeding, the leading American cases take strong ground in favor of the rule. Such was the view expressed by the Supreme Court of Massachusetts, in the case of *Cook* v. *Darling*, 18 *Pickering* 193, in which a plea to an action of debt on a judgment of a county court, that the defendant was not an inhabitant of the state at the time when the action was brought, had no notice of its inception, and did not appear, was declared to be bad on demurrer. This case is directly pertinent, on the question now

to be decided; the plea raised the same question of juris-
diction that the petitioners now raise, the central fact being
that the defendant was a non-resident, and had not, by ser-
vice of process, been legally brought under the jurisdiction
of the court; but the record was held to be an estoppel
against the admission of such a contention.   The decision in
*Granger* v. *Clark*, 22 *Maine* 128, stands on the same footing,
and in *The Town of Huntington* v. *The Town of Charlotte*,
15 *Vt.* 46, the Supreme Court of Vermont exemplified the
the amplitude of the rule by maintaining that this conclu-
sive presumption of complete jurisdiction over the parties
existed even where the facts necessary to give jurisdiction do
not appear on the record.   Out of the numerous cases in the
reports on this subject, I will refer to the few following:
*Hill* v. *Hiffley*, 6 *Yeager* 444; *Tarbox* v. *Hays*, 6 *Watts* 398;
*Field* v. *Gibbs*, 1 *Peters' C. C. R.* 155.

And in the Supreme Court of our own state, in the case of
*Vandyke* v. *Bastedo*, 3 *Green* 224, this doctrine, in its broad-
est form, was recognized; and the entire reasoning of the
court, in *Moulin* v. *The Insurance Co.*, 4 *Zab.* 223, proceeds
upon the assumption that such doctrine is undeniable law.

The legal rule, then, is this: that the decision of a domes-
tic court of general jurisdiction, acting within the scope of
its powers, has inherent in it such conclusive force, that it
can not be challenged collaterally, and that such decision defi-
nitively binds all parties embraced in it, unless, on objection
made to such court itself, or in a direct course of appellate
procedure.   The result of this doctrine obviously is, that the
present petitioners have nothing to apprehend from any sup-
posed error in the publication of the notice to the absent
defendant, as such absent defendant cannot set up such defect
against the title offered under this decree.

I have preferred to put the question here raised, upon this
broad ground, as it seemed to me that it should be under-
stood that titles by force of foreclosure decrees, are not open
to objections of the general character of the one here inter-
posed.   But if this principle had not, as I think, ruled the

Long Branch and Sea Shore R. R. Co. *v.* Sneden.

case, I should have arrived at the same end, so far as the decision of the question now before the court is concerned, as I entirely agree with the Chancellor in his view that the notice to the non-resident was, in substance and effect, published in the manner directed.

I shall vote to affirm the order appealed from, with costs.

Order unanimously affirmed.