In this suit Patrick J. Foley became the purchaser of the mortgaged premises at sheriff's sale at his bid of $5,250. He deposited with the sheriff $500 to secure the bid. It was announced that the premises were to be sold subject to taxes for the years 1926, 1927, 1928, and current water rents, then totaling $504.34. Foley now asks to be relieved of his bid *Page 356 
and to have the deposit repaid him, upon the ground that the title is defective.
The notice of this motion did not state the grounds of objection to the sale, but stated that affidavits which were served would be read on the hearing of the motion. Service was acknowledged and counsel for complainants appeared and argued the matter. So there is no objection on this score. Several grounds of objection are contained in the affidavit of counsel for the building and loan association, who had promised to make the loan to the purchaser on the property, but which loan was withheld because of counsel's certificate that his investigation disclosed that the title was defective.
The only two grounds of objection pressed upon the hearing were:
"(f) The return of the sheriff on the subpoena tested September 25th, 1928, is irregular, in that it states that he served the within writ by delivering true copies and in that, while he may have intended that he served William L. and Joseph McCluskey, by leaving copies thereof at their usual place of abode with Minnie McCluskey, c., he stated `Minnie McCluskey personally and William L. McCluskey and Joseph R. McCluskey by Minnie McCluskey, a member of their household over the age of fourteen years, at their usual place of abode,' c., `James McCluskey and Margaret McCluskey personally October 3d 1928, at their usual place of abode, 69 Long street, East Orange.'"
"(g) On October 17th, 1928, an order amending the bill so as to make Mrs. George A. McCluskey a party was entered. Subpoena was issued against her October 19th, 1928, returned non-est with an affidavit of non-residence by the sheriff. George A. McCluskey was also returned non-est with an affidavit of non-residence, and an affidavit of inquiry was filed showing that the whereabouts of Mr. and Mrs. George A. McCluskey were unknown. An order of publication dated October 26th, 1928, returnable December 27th, 1928, as against George A. McCluskey and Mrs. George A. McCluskey, was made requiring that the notice prescribed by the rules of court should, within ten days thereafter, be served personally on the said absent defendants by delivering a copy thereof to them or by publication within ten days in the Newark Evening News. The first insertion of the notice in said paper was on November 14th, 1928, as appears from the proof of publication filed December 29th, 1928."
Now, as to the first objection (f): The sheriff deputized Albert H. Freeman to serve the writ. The return is as follows: *Page 357 
"Served the within writ upon the following within named defendants by delivering true copies thereof with tickets annexed as follows: to Edward I. McCluskey personally at the Hall of Records, Newark, N.J., October 8th, 1928. Minnie McCluskey personally and William L. McCluskey and Joseph R. McCluskey by Minnie McCluskey, a member of their household over the age of fourteen years at their usual place of abode, 109 North Third street, Newark, N.J., September 28th, 1928. And James J. McCluskey personally, Margaret McCluskey personally, October 3d 1928, at their usual place of abode, 69 Long street, East Orange, N.J. Defendant George A. McCluskey non-est.
 CONRAD DEUCHLER, Sheriff.
By ALBERT H. FREEMAN, Special Deputy."
The Chancery act (P.L. 1913 p. 748; 1 Comp. Stat. Cum. Supp.p. 257 §§ 33, 35) provides:
"Every subpoena or process for appearance shall be served by the sheriff or other officer authorized to serve writs of summons and other common law processes, on the person to whom it is directed, by giving to him personally a copy or leaving a copy thereof at his dwelling house or usual place of abode, at least five days prior to its return," c.
The return in this case is good. The return "served" alone would have been sufficient; and would have been presumptive of service of the tickets. See Bell v. Gilmore, 25 N.J. Eq. 104;Mulford v. Reilly, 32 N.J. Eq. 419. However, the facts which the sheriff sets out appear to entirely comply with the statute, although he need not state them in his return, because not required by the act, which has been in existence very many years, though amended by the last cited statute, but not in a way which concerns the method of serving.
If the sheriff instead of returning his writ "duly served," or "served," on such and such defendants, sets out facts showing what the service he made actually was, and the facts affirmatively showed that he had not served the writ in substantial compliance with the statutory directions, then, doubtless, the return would be set aside if prompt application were made therefor after notice to the defendant. In Dick. Ch.Prec. (Rev. ed.) p. 18, note a, it is stated that "the *Page 358 
mode of serving is by delivering a copy of the writ and showing the original at the time of such delivery to the defendant, or in case of his absence, to his wife, servant or some other member of his family at his dwelling house or usual place of abode. SeeHarrison v. Farrington, 8 Stew. Eq. 4." An examination of the case just mentioned discloses that there is not a word in it to the effect that service is made by showing the original and leaving a copy. Nor do any of the numerous cases cited in the reporter's note state any such thing. If it be stated in any of the cases that are cited without showing what they hold, they certainly do not apply here, for our statute is explicit in the directions for serving, and nowhere provides that the original shall be exhibited and a copy left, and our cases hold that the return "served" alone would be sufficient. A substantial compliance with the statute as to service of process is all that is required. Wagner v. Blanchet, 27 N.J. Eq. 356. If the court should allow its processes to be disregarded or evaded on mere technical grounds its powers would be enfeebled and its usefulness impaired. Endicott v. Mathis, 9 N.J. Eq. 110, 113,114. The fact that a subpoena is returnable on a legal holiday is not ground for setting it aside. Kinney v. Emery, 37 N.J. Eq. 339.
And if a subpoena to answer be made returnable on Sunday the return day can be amended so as to make it returnable on the following Monday, and a decree pro confesso may be entered thereon. McEvoy v. Trustees, c., 38 N.J. Eq. 420;
see, also, Lawrence Harbor Colony v. American Surety Co.,70 N.J. Law 589. It is said in McEvoy v. Trustees that nothing is required of the defendant on the return day, not even to enter an appearance, whether he intends to defend or not; and the service of the writ notifies the defendant of the beginning of the suit and the return day is the date from which the time for defending begins to run. And the law thus laid down is followed and enforced in the decision in Sheldon v. Sheldon, 100 N.J. Eq. 24,
to the effect that the time for service of process between the day of teste and return is directory only and not mandatory. See, also, Crowell v. Botsford, 16 N.J. Eq. 458;Berenbroick v. Hofstetter, 93 N.J. Eq. 542. *Page 359 
As to the defect alleged to have occurred in the proceeding under the order of publication (g): The order of publication provided that notice of the order prescribed by law and rules of court be served personally on defendants by delivery of a copy thereof to them or by publication within the said ten days in the Newark Evening News, for four weeks successively, at least one in each week.
Now, the prescription in the statute is that notice of the order within twenty days be served or published at least four times and mailed to defendant's post office address, if known. 1Comp. Stat. Cum. Supp. p. 258 §§ 33, 13. Let it be observed that the order is dated the 26th day of October, and the first of the strictly legal publications was November 14th, 1928. That was within twenty days (actually nineteen days) after the date of the order. It complied with the statute last above mentioned, but not with the order, which required ten days, the chancellor by statute having power to make such order. On September 9th, 1929, an order was made and filed in this cause which recited:
"And it further appearing to the court that in accordance with said order of publication, notices were published in the `Newark Evening News,' on October 31st, 1928, and again on November 7th, 1928, which said notices contained all the necessary requisites as prescribed by rule number 36 of the rules of the court of chancery, excepting, however, that said notices did not bear the signature and post office address of complainant or his solicitors, as required by the said rule of this court; and it further appearing that on November 14th, 1928, and again on November 21st, 1928, and again on November 28th, 1928, and again on December 5th, 1928, notices were published in the `Newark Evening News,' which said notices contained all the necessary requisites prescribed by law and the rules of this court, including the signature and post office address of complainant's solicitors; and application now being made by Lintott, Kahrs 
Young, solicitors as aforesaid, requesting that so much of said rule number 36 as requires the signature and post office address of complainant's solicitors, or of complainant if he has no solicitor, be dispensed *Page 360 
with, in so far as the notices published on October 31st, 1928, and November 7th, 1928, as aforesaid, are concerned."
So it appears, that there were four publications of the notice that strictly complied with the statute. The order adjudged that so much of chancery rule 36 as required the signature and post office address of complainant's solicitors be dispensed with insofar as the notices published in said cause on October 31st, and November 7th, 1928, were concerned.
Amendment in practice is the correction by allowance of the court of an error committed in the progress of a cause; and amendments are allowed in equity with great liberality. The power of amendment in chancery has been evolved as a matter of practice and is not regulated by statute. Fodor v. Kunie, 92 N.J. Eq. 301,304. And in Equitable Life Assurance., c., v. Laird,24 N.J. Eq. 319, 324, it was held that an error in the name of a paper in which notice to an absent defendant was directed to be published, was amendable after sale under execution; that no prejudice thereof resulted to the purchaser. If a notice published in a paper not named can be amended even after sale under execution, then, surely, an order of publication can be amended in similar circumstances, by dispensing with certain requirements in early publications, when, in fact, sufficient publication is made in accordance with the statute, although the order, in terms, required publication, c., under power given to the court, in less time than provided in the statute itself. And the order will be construed as changing the time within which publication should be made, if a sufficient number of insertions were made in statutory time, as here. The order doubtless should have been made nunc pro tunc, and will now be so made, if necessary; although it will appear from what follows that no order of the kind is necessary.
The case of Equitable Life, c., v. Laird was affirmed subnom., McCahill v. Equitable Life Assurance, c., 26 N.J. Eq. 531,
wherein the court of errors and appeals, speaking by Chief-Justice Beasley, held that a purchaser under a foreclosure *Page 361 
sale will not be relieved from his bid on the ground that the title offered him is defective, such supposed defect arising from an alleged irregularity in the publication of the notice to a non-resident of the pendency of the suit.
In the case at bar the only defect alleged in the publication is that the first two notices did not contain the name and post office address of the solicitors of the complainant. Though that be the fact, four other publications, by subsequent order of the court, and which the court had a right to make, were held in effect to be efficacious. Rule 4 provides that the design of the rules is to facilitate business and advance justice, and that they may be relaxed or dispensed with by the court in any case where it shall be manifest that a strict adherence to them would work surprise or injustice. The instant case affords a conspicuous example of injustice being worked by deciding in favor of the bidder's highly technical objection. The absent defendants had all the printed notices that the subsequent order and the rules of court devised for their protection; and to relieve this bidder from his purchase upon the ground that the chancellor had no power to make an amendment in the first place, or that they were misled in the second place, is, in my judgment, entirely inadmissible.
While a purchaser at a judicial sale, not a party to the suit, is made a party by the purchase, so far as questions arising from the sale are concerned (Collins v. Kiederling, 87 N.J. Eq. 12), nevertheless, according to the decision of the court of errors and appeals in the Equitable Life Assurance Society'sCase, such a purchaser, not being a party to the suit, cannot make a collateral attack upon the judgment of a court of general jurisdiction ordering the sale. And that is exactly what this purchaser is endeavoring to do in the case sub judice. Now, in this case, on December 29th, 1928, an interlocutory decree and order of reference was made and filed, which recited interalia:
"That due notice of the order of this court made on the 26th day of October, 1928, directing George A. McCluskey and Mrs. George A. McCluskey, his wife, defendants, to appear, *Page 362 
plead, answer or demur to the complainant's bill on or before the 27th day of December, then next, has been published and that the residences of the defendants George A. McCluskey and Mrs. George A. McCluskey, his wife, cannot be ascertained so that a copy of said notice cannot be mailed to them in accordance with the order of this court."
And that they (and others) had not filed any plea, demurrer or answer to the bill within the time limited by law but wholly failed and neglected so to do; and it was ordered and decreed that the bill be taken as confessed against the defendants who had not answered which included George A. McCluskey and wife, and that it be referred to a master, c. Again: On February 11th, 1929, a final decree was filed and entered in which it was recited that the bill having been taken as confessed against George A. McCluskey and Mrs. George A. McCluskey, it was ordered, adjudged and decreed that the master's report and all matters and things therein contained stand ratified and confirmed, and that the premises be sold to raise and pay the several sums of money due, c.
Where the notice of an order of publication is made to the satisfaction of the chancellor, and he makes a decree thereon, it is conclusive upon the question as between a non-resident defendant and the purchaser at the sale under the decree.McCahill v. Equitable Life Assurance Society, supra.
The opinion of the learned chief-justice in the Equitable LifeAssurance Society's Case (26 N.J. Eq. — at p. 538), concludes as follows: "The legal rule, then, is this: that the decision of a domestic court of general jurisdiction acting within the scope of its powers, has inherent in it such conclusive force that it cannot be challenged collaterally, and that such decision definitively binds all parties embraced in it, unless on objection made to such court itself, or in a direct court of appellate procedure. The result of this doctrine obviously is, that the present petitioners have nothing to apprehend from any supposed error in the publication of the notice to the absent defendant, as such absent defendant cannot set up such defect against the title offered under this decree. *Page 363 
"I have preferred to put the question here raised upon this broad ground, as it seemed to me that it should be understood that titles by force of foreclosure decrees are not open to objections of the general character of the one here interposed. But if this principle had not, as I think, ruled the case, I should have arrived at the same end, so far as the decision of the question now before the court is concerned, as I entirely agree with the chancellor in his view that the notice to the non-resident was, in substance and effect, published in the manner directed."
Another thing: the amount due the defendant William J. Kearns, on his mortgage, which is confessedly a lien only on one-fifth of the premises, can be taken care of out of the share of the surplus money on which it is such lien.
The motion to declare the sale null and void, and to relieve the bidder therefrom, and for the return of his portion of the purchase money paid down, is denied. The sale must be enforced.