The bill prays that the judgment of the circuit court be set aside. Such relief cannot be granted. Sands v. Ruddick,87 N.J. Eq. 620; Povey v. Ready, 88 N.J. Eq. 342. In the first of these cases, Mr. Justice Trenchard wrote: "The court of chancery has no power in the strict sense of the term to set aside a judgment at law. In granting relief, it does not interfere with the records of the law court or strike therefrom the judgment. It treats the proceedings at law as valid and grants relief against the consequences thereof because the rights acquired thereunder cannot be retained in good conscience by reason of some new matter on which the court of law did not or could not pronounce a judgment, or which, for some just cause, the party could not bring to the consideration of the court of law."
The Speranzas urge as a ground for relief against the consequences of the judgment that the circuit court never acquired jurisdiction over their persons inasmuch as process was not served upon them in the manner required by the Mechanics' Lien act (P.L. 1898 p. 538 § 23; Comp. Stat. p. 3307, as amended, P.L. 1912 p. 470, and by the Practice act, P.L. 1903p. 537 § 52; Comp. Stat. p. 4067, as amended, P.L. 1912p. 469). The return of the sheriff sets forth that the summons was served by leaving a copy at their place of abode as permitted by the statute. Mrs. Speranza says that the address mentioned in the return was not her place of abode and relies on the construction of the statute contained in Mygatt v. Coe, 63 N.J. Law 510;Feighan v. Sobers, 84 N.J. Law 575; affirmed, 86 N.J. Law 356,
and Sweeney v. Miner, 88 N.J. Law 361. Defendants, in support of the service, cite Hackettstown Bank v. Mitchell,28 N.J. Law 516; Camden Safe Deposit and Trust Co. v. Barbour,66 N.J. Law 103, and Missell v. Hayes, 84 N.J. Law 196; affirmed,86 N.J. Law 348. Mr. Speranza, while admitting that he was living at the address mentioned in the sheriff's return, relies upon his daughter's evidence to establish the falsity of the return and the lack of jurisdiction of the circuit court. She testified positively that the summons and *Page 323 
complaint were not served upon her on December 21st, 1929, or at any other time. The return of the sheriff endorsed on the process, even when not conclusive, is evidential of the facts stated therein (Hotovitsky v. Little Russian Greek Catholic,c., Church, 78 N.J. Eq. 576) and is entitled to great weight as to those facts which are within the knowledge of the officer making the return. The force of this evidence is not overcome by the testimony of Miss Speranza, and so I find that the summons and complaint were served at the place and in the manner set forth in the return.
The sufficiency of the service cannot, however, be questioned in this cause. At common law, the return of the officer could not be contradicted even in the suit in which the process issued. The return could, indeed, be avoided by proof of collateral facts which made the service ineffective. Halsey v. Stewart,4 N.J. Law 420; Chapman v. Cumming, 17 N.J. Law 11; Williams v.Reed, 29 N.J. Law 385. The common law rule was modified in 1855 by the legislature (P.L. 1855 p. 288 § 5; Comp. Stat. p. 4066
§ 50), so that the return may, in the same action, be shown to be untrue. But by its express terms, the remedy given by this statute is available only in the action in which the process issues. The return of the sheriff of Bergen county is a part of the judgment record of a domestic court of general jurisdiction and as such, it is conclusive against collateral attack. The present bill, while it directly alleges that the return is false and seeks to avoid the judgment, is a collateral attack within this rule. Castner v. Styer, 23 N.J. Law 236, 247; McCahill
v. Equitable Life Assurance Society, 26 N.J. Eq. 531; Dickinson
v. City of Trenton, 33 N.J. Eq. 63; Rips v. Levitan, 3 N.J.Mis. R. 1166; 130 Atl. Rep. 882. In the McCahill Case, Chief-Justice Beasley said: "Notwithstanding inconsiderate dicta to be found here and there in some of the modern reports, it seems to me unquestionable that it is the general legal principle that a judgment of a superior court cannot be impeached collaterally for want of jurisdiction over the parties to it." And again, "the legal rule then is this: That the decision of a legal court of general jurisdiction, acting *Page 324 
within the scope of its powers, has inherent in it such conclusive force that it cannot be challenged collaterally and that such decision definitely binds all parties embraced in it unless on objection made to such court itself, or in a direct course of appellate procedure." If the circuit court did not have jurisdiction over the Speranzas, their remedy was an application to that court to vacate the judgment. McKelway v. Jones,17 N.J. Law 345; Sweeney v. Miner, supra.
In this suit then, the judgment of the circuit court must be accepted as a valid exercise of the jurisdiction of that tribunal. Is there any equitable ground for relieving Mrs. Speranza from the consequences of that judgment? She contends that she has a valid legal defense which she was prevented from interposing by reason of her ignorance that the action was pending against her. It does not appear that the plaintiff in the action at law, Mr. Griffithes, was guilty of any fraud or that he was aware of Mrs. Speranza's predicament. The rule governing the interference of equity with a judgment at law has been stated many times; for instance, in Brick v. Burr, 47 N.J. Eq. 189:
"To secure the interference of equity, it will not suffice to show that injustice has been done by the judgment against which relief is sought. It must appear that the party has an equitable defense of which he could not avail himself at law or had a good defense at law of which he was ignorant until after the time for making defense at law had passed, or that he was prevented from making his defense by fraud or artifice of his adversary or by fraud, accident or mistake unmixed with any negligence of his own, or that his ground of interference is a matter of pure equity cognizance."
In Herbert v. Herbert, 49 N.J. Eq. 70, Vice-Chancellor Van Fleet was faced by this situation: An action of debt was begun by attachment and proceeded uncontested to judgment. The property attached was sold by the auditors and bought in by the judgment creditor. The defendant had a valid defense but he did not hear of the suit or of the judgment until after the sale. He then filed his bill. There were other factors in the case, but those recited were the ones upon *Page 325 
which the learned vice-chancellor principally relied. He advised a decree requiring the plaintiff in attachment to restore what he had wrongfully acquired by means of his judgment. In the court of errors and appeals, the decree was affirmed. 49 N.J. Eq. 565.
Chief-Justice Beasley wrote: "We are of opinion that in such a case as this, the only ground of jurisdiction of a court of equity is the presence of fraud in the proceedings. * * * This court, therefore, affirms the decree in this case on the ground that the plaintiff in attachment fraudulently used and managed that proceeding for the enforcement of a claim that he knew had no legal efficacy." Mr. Justice Dixon dissented on the ground that fraudulent conduct on the part of the plaintiff in the attachment suit was not proved. 50 N.J. Eq. 467. If theHerbert Case were the latest decision on the subject, I would say that mere ignorance of the pendency of the law action coupled with a valid defense is not a ground for the interference by this court when no fraud appears. But there are later cases to the contrary. Mierke v. Sebecke, 74 Atl. Rep. 977; Yung v. RollStickley Sons, 88 N.J. Eq. 251. In neither of these cases was the judgment creditor guilty of fraud; in both of them, the defendant at law was ignorant of the pendency of the suit and had a legal defense and on that ground was relieved by the court of chancery.
The defendants argue that Mrs. Speranza should not be permitted to contradict the sheriff's return even for the purpose of showing that she was ignorant that the suit was pending and so had no opportunity to present her defense in the circuit court. This is not sound. The return of the sheriff is conclusive only for the purpose of establishing jurisdiction. Vigers v.Mooney, 3 N.J. Law 468; Neitert v. Trentman, 104 Ind. 390;4 N.E. Rep. 306. The evidence presented proves that Mrs. Speranza did not know anything about the mechanic's lien action until her return to this state several weeks after the sale of the property. It also establishes that she had a legal defense, which, if interposed, would have prevented the personaljudgment against her. She did not purchase materials from Griffithes or owe him anything. *Page 326 
While she was willing that her husband build on her land, she did not make him her agent for that purpose. The judgment creditor offers to surrender his general judgment against her, and will be decreed to do so. The next question is whether there was a defense to the lien claim on which the special judgment is based.
When Nicolo Speranza decided to build the houses, he entered into a contract with complainant, C. D. Building Company, for the greater part of the work. The building company sought to buy brick and other material from Griffithes but its credit was not good. So the president of the company, John DeFino, and Speranza called on Griffithes who agreed to sell the material to Speranza instead of to the construction company. To this arrangement Speranza consented and the material was supplied accordingly. Such, I find, is the fact, although DeFino and Speranza swear the material was sold by Griffithes to DeFino. If the latter were the truth, DeFino should have been named in the lien claim and in the suit thereon, and the failure to join him would probably have been a good defense to the lien. Another possible defense appears: The lien claim and the complainant in the circuit court charge Rosina and Nicolo as joint contractors for the material, whereas it appears that Nicolo was the sole contractor. But I need not consider these matters, since the bill of complaint does not allege them. Complainant's relief must be based on facts alleged in the bill and admitted by the defendant, or proved; it cannot be based on facts not pleaded although established by the proofs. Andrews v. Farnham, 10 N.J. Eq. 91; Midmer v.Midmer's Exr's, 27 N.J. Eq. 548.
The bill alleges that the defense to the mechanic's lien action was this: Part of the material for which Griffithes claimed a lien was taken back by him but never credited to Mrs. Speranza; and also, by agreement with DeFino, Griffithes was obligated to credit the account of DeFino and the Speranzas with $200 then owing from Griffithes to DeFino. These allegations are not proved. Mrs. Speranza cannot have relief against the special judgment. *Page 327 
There is still another ground on which Mrs. Speranza seeks relief, namely, that she was prevented by her ignorance of the litigation from attending the sheriff's sale and that the sheriff sold the property at a grossly inadequate price. This court will not relieve against a sheriff's sale merely for inadequacy of price. But gross inadequacy, plus accident or mistake, which prevent the owner from attending the sale, is a ground for setting aside the sale on terms, when the owner has not been negligent. West Ridgelawn Cemetery v. Jacobs, 108 N.J. Eq. 513; New Jersey National Bank and Trust Co. v. Savemore RealtyCo., 107 N.J. Eq. 478. The purchaser at the execution sale in the instant case was the Minerva Construction Company, a corporation controlled by Mr. Griffithes, the judgment creditor. The parties agree that the situation is the same as if Mr. Griffithes had bought in the property.
The premises were sold on the execution by the sheriff for $100, subject to taxes and a mortgage on which there was due about $2,500. A few days later, the purchaser sold, free of the mortgage for $5,500 — an increase of $2,900. The evidence as to the value of the property at that time is contradictory. Both houses were still unfinished. There is much dispute as to the value of the work done before then and as to how much it should have cost to finish the houses. There is also dispute as to the value of the land. None of the expert testimony was impressive. The fact is, however, that immediately after the sheriff's sale, the property was resold for $5,500. There appears to have been no connection between Rubin, the purchaser, and Griffithes or the Minerva Construction Company. Rubin immediately entered into possession and started work on the completion of the houses and spent over $11,000 on the work. He now rents one of the houses at $75 a month. I think that $3,000 was the quick cash value of the property, subject to taxes and mortgage, when the sheriff sold for $100.
This would be a sufficient disparity to require the sale to be set aside as to Mrs. Speranza, did it appear that she was materially injured. But she was not; Griffithes had a judgment *Page 328 
lien for $1,081; C. D. Building Corporation has a lien claim for $2,445; Westcoast Distribution Company for $1,598, and Harry Weinberg for $1,314; making a total of more than $6,000. Griffithes' lien has been settled by judgment; the other liens have not been established by judgment or proof in this case. But Mrs. Speranza, having joined with these lienors in filing the bill of complaint in which their lien claims are alleged as a ground for relief, cannot dispute their liens. One more factor should be noted: It does not appear that Mrs. Speranza is personally liable to any of her co-complainants. The liens totaled a sum greater than the value of the property. So Mrs. Speranza's title was of no substantial value; she was not injured materially by the sale or the inadequate price. Therefore, she cannot persuade the court to set the sale aside.
Nicolo Speranza and the three complainant lienors also assert ignorance of the sale and ask to have it annulled. I give little credence to the testimony of Speranza and DeFino. I am satisfied they well knew that the property was advertised for sale. But neither Westcoast Distribution Company nor Weinberg knew the property would be sold.
The interest of the distribution company and of Weinberg arises from the Mechanics' Lien act. Comp. Stat. p. 3290. Section 29 provides that all lien claims shall be concurrent liens and shall be paid pro rata out of the proceeds of the execution sale; "and for the purpose of distribution, the sheriff or other officer shall pay such proceeds to the clerk of said [circuit] court, to be by said court distributed among such claims filed, or as shall be filed according to this act before petition filed in said court for distribution thereof, and among such only." The sheriff's deed in the instant case was dated August 25th, 1930. Presumably the sheriff then paid the proceeds into court and some party in interest petitioned the court for distribution. There is no evidence on this subject, but such is the procedure prescribed by the act. Weinberg's lien claim was not filed until September 17th. If this was after the petition for distribution had been filed, then Weinberg had no interest in the proceeds and *Page 329 
was not concerned in the amount realized by the sheriff. The burden was on Weinberg to prove all the elements which collectively would form his ground for relief in this cause. One element was that injury was done to him by the sale. He has failed to show that he was injured in any way. The lien claim of the Westcoast Distribution Company was filed August 9th, and so is not open to the objection considered above. Both the distribution company and Weinberg have failed in another item of proof: While they have shown that they filed mechanics' lien claims in the county clerk's office, they have not proved the facts which give rise to liens of this nature, for instance, that they performed labor or furnished material for the buildings on the premises in question. As against defendants, the filing of the claims does not raise a presumption that liens existed. Of course, if they had no liens, these claimants were not concerned in the sale of the property. There is, I take it, yet another weakness in the case of the distribution company. Inadequacy of price coupled with accident or mistake is not a ground for setting aside a sale if the predicament of the party asking relief was caused by his own negligence. When a party files a lien claim, common caution should dictate that he examine the records to ascertain whether there are other lien claims on the property and what is their status. Presumably he knows that if the property be sold on execution upon another lien, his lien will be destroyed and he will have an interest in the proceeds of the sale. If the distribution company had made inquiry of this sort, it would have immediately found that the property was advertised for sale under Griffithes' execution and would have been able to attend the sale and protect its interest; having failed to do so, this company cannot complain of the inadequacy of the price. Complainant lienors say that Griffithes was under a duty to them to inform them when the sale would be held; that this duty arose from the fact that all lien claimants would share in the proceeds of the sale. This would mean that just before the sale, the judgment creditor must examine the records to learn who have filed lien claims and must immediately notify them *Page 330 
of the sale. There is no merit in this contention. Each lien claimant must make such inquiry and take such steps as he deems advisable to protect himself; he cannot rely on other creditors to hunt him up and tell him to bestir himself. I have been assuming that the holder of a mechanic's lien has such an interest in the property liened that he may attack a sale for inadequacy of price. I am not sure, however, that such is the law. There would be serious inconvenience if the sale could be questioned on this ground, not only by the owner of the property but by lien claimants of whose existence the judgment creditor might well be ignorant.
I have come to the conclusion that the attack on the sheriff's sale must fall, without reference to the resale to Rubin. He agreed to purchase the property on August 22d, made a payment on account of the purchase price and immediately entered into possession and started work on the houses. He did not learn of any attack on the execution sale until September 22d, when he was informed that Mrs. Speranza claimed to be the owner of the property. By that time, one of the houses had been substantially finished and work had progressed considerably on the other house. He had no means of deciding whether Mrs. Speranza's claim was valid or not. If he should stop work until the title was adjudicated, the unfinished houses would deteriorate rapidly; so he pressed the work to completion despite her claim. I think he was justified in doing so under the circumstances. It seems to me that his equity is equal to that of complainants and that if the sale were to be set aside, it must be on terms which would protect Rubin, as by giving him a lien for the amount he spent on the property. It is unnecessary for me to decide this question, since I have come to the conclusion that the sale must stand. *Page 331